# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

RODNEY MILTON,

    Plaintiff,

vs.                        CIVIL ACTION NO. CV 03-J-2892-NE

CINGULAR WIRELESS EMPLOYEE
SERVICES, INC.

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant, Cingular Wireless Employee Services, LLC's ("Cingular")[1] motion for summary judgment with incorporated supporting brief and exhibits (doc. 25). Plaintiff failed to file any opposition to said motion. Based on a consideration of the foregoing and for the reasons set forth below, the court is of the opinion that Cingular's motion for summary judgment is due to be **GRANTED**.

### I. Factual Background

Plaintiff, Rodney Milton ("Milton"), an African-American male, filed this action against Cingular on October 24, 2003, seeking declaratory judgment, injunctive relief, and an award of damages under Title VII of the Civil Rights Act

---

[1]Defendant's correct name is Cingular Wireless Employee Services, LLC. Defendant's motion at 1. The court **ORDERS** the Clerk of the Court to let the record reflect the correct name.

of 1964 as amended (42 U.S.C. § 2000e *et seq*.). In his two count complaint, plaintiff alleges that he was terminated because of his race in violation of Title VII of the Civil Rights Act of 1964, and that he was terminated in retaliation for asserting his federal statutory rights under Title VII.[2] Complaint, ¶¶ 13, 18. Defendant filed an answer to plaintiff's complaint denying the above allegations (doc. 6).

The defendant Cingular is a wireless communications service provider that was created in 2000 as the result of a joint venture between BellSouth Mobility and SBC Communications. Def. Ex. 1, ¶ 2. The plaintiff began his employment with BellSouth Mobility in 1995, and was employed by Cingular upon its formation in 2000. While employed by BellSouth Mobility, BellSouth Mobility issued plaintiff an American Express corporate card. Milton Depo., pp. 56-57. It is undisputed that BellSouth Mobility did not prohibit the use of corporate cards for personal charges as long as the balance was paid by the employee. Def. Ex. 2, ¶ 10.

During the course of the plaintiff's employment with Cingular, plaintiff applied for and was provided with a "Cingular VISA Card" corporate credit card. Milton Depo., pp. 62-63; Def. Ex. 2, App. A; Def. Ex. 1, ¶ 5. The newly issued Cingular VISA card was to be used only for business purposes, which was

---

[2] In his deposition, the plaintiff agreed to voluntarily dismiss his claim for retaliation. Def. Ex. 3, pp. 156-158. Thus, the court considers only the plaintiff's claim for discrimination.

different from BellSouth Mobility's policy. [3]

Plaintiff admits that he used the Cingular VISA for personal purposes. Milton Depo., pp. 152-153.  The plaintiff's use of the above card for personal purposes was discovered by the defendant company's computerized reimbursement program. Def. Ex. 1, ¶¶ 11-12.  The defendant's computerized reimbursement system alerted both the defendant company and employee to the fact that an employee either attempted to get reimbursed for a charge on the VISA that was personal in nature or if an employee failed to note the reason for an expense charged on the card within a certain time period. Def. Ex. 1, ¶ 10.  When the plaintiff either failed to mark charges on the VISA card as business or attempted to get reimbursed for a personal charge, the defendant's computerized reimbursement program sent an email to the plaintiff and the plaintiff's manager that notified each of plaintiff's violation of the business only use policy. Def. Ex. 1, ¶ 10.

After the plaintiff's manager, Kyle Rakestraw, ("Rakestraw") received an

---

[3] The defendant's Code of Business Conduct provides: "Company provided credit cards may not be used for personal expenses." Def. Ex. 1, ¶ 4 and App. A.  On March 15, 2002, Cingular sent an email instructing all employees to destroy their American Express cards and apply for a new Cingular VISA Card. Def. Ex. 1, ¶ 5 and App. B.  Along with the directive to destroy the American Express card, the defendant's March 15, 2002 email stated that use of the Cingular VISA card "for personal charges is prohibited." Def. Ex. 1, ¶ 5 and App. B, p. 2.  The application that plaintiff completed to obtain his Cingular Visa Card provides: "Applicant ...agrees that the Commercial Card will be used for business or commercial purposes only..." Def. Ex. 2, App. 5.  On June 18, 2002, defendant sent an email to all of its IT employees, which included plaintiff, advising that "[m]isuse or fraudulent use of the Company credit card is in direct violation of the Code of Business Conduct and could result in disciplinary actions or constitute grounds for dismissal." Def. Ex. 1, ¶ 6 and App. C, p. 2.  Plaintiff admits that it is "possible" that he received the above email.  Milton Depo., pp. 67-68.

email that alerted him to plaintiff's violation of the business purpose only credit card policy, Rakestraw investigated the matter. Def. Ex. 1, ¶ 12; Milton Depo., p. 108. When confronted by Rakestraw, plaintiff admitted that he had used the card for personal purposes. Milton Depo., pp. 108-109. Plaintiff admitted that he knew that using the card for personal purposes was "wrong" and that no supervisor told him that using the card for personal purposes was acceptable. Milton Depo., pp. 109, 152-153. Rakestraw terminated plaintiff's employment with Cingular on February 2, 2003 because the plaintiff had improperly used his card for personal expenses in violation of company policy. Def. Ex. 1, ¶ 17, Milton Depo., pp. 116-118.

Although the plaintiff admits he made personal charges with his corporate card, plaintiff contends that his termination is attributable to defendant's racial bias. Complaint, ¶ 8. In particular, plaintiff alleges that a similarly situated white employee, who also made personal charges on his company credit card, was not terminated from his position. Complaint, ¶ 7. Plaintiff alleges that the white employee's personal credit card privileges were merely temporarily suspended. *Id*. In fact, the evidence in the record demonstrates that the Caucasian employee, John Poythress ("Poythress"), was terminated the same month as plaintiff for incurring personal charges on his company credit card. Def. Ex. 6, ¶ 3.

On or about February 3, 2003, Rakestraw also reviewed the charges of a number of other employees including John Poythress ("Poythress"), other

Caucasian employees, and other African-American employees.  After reviewing the charges, Rakestraw believed that several of Poythress' charges for gas and food made on his Cingular Visa Card in 2002 were not business expenses.  Def. Ex. 1, ¶ 20.  Poythress denied using the card for personal use and attempted to justify each of the purchases. Def. Ex. 1, ¶ 21 and App. I.  Despite Poythress' efforts and even though Poythress never admitted incurring personal charges on his credit card, Rakestraw reached the conclusion that Poythress violated the defendant's business only policy and terminated Poythress' employment on February 12, 2003. Def. Ex. 1, ¶ 22.

Additionally, plaintiff alleges that the defendant discriminated against the plaintiff for calling and reporting the actions of a Caucasian supervisor to the defendant corporation's ethics hotline. Complaint, ¶ 8; Def. Ex. 1, App. K. Plaintiff alleges that this supervisor approached him about a complaint made by one of the plaintiff's Caucasian co-workers regarding the plaintiff's attitude toward a potential customer. *Id*. The plaintiff called defendant's ethics hotline to complain of allegedly discriminatory treatment and favoritism exhibited by the management. *Id*.  Plaintiff alleges that the defendant only discovered the personal charges made by plaintiff on the corporate credit card after his call to the ethics hotline. *Id*.

However, the evidence in the record indicates that Rakestraw learned of the plaintiff's complaint of discrimination after the plaintiff was terminated. Def. Ex. 1, ¶ 27.  Additionally, evidence in the record indicates that other employees, both

Caucasian and African-American, were terminated between January 24, 2003 and February 18, 2003, after the defendant corporation learned that the employees incurred personal expenses on their corporate credit cards. Def. Ex. 2, ¶ 8.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp*., 477 U.S. at 322-23.

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the

'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c).; *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991). However, the court may not make credibility determinations, nor weigh the parties' evidence. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).

### III. Analysis

Plaintiffs seeks relief under Title VII of the Civil Rights Act of 1964 (42

U.S.C. 2000e *et eq*.).[4] Under Tittle VII, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case of race discrimination may be established through direct evidence of discriminatory intent or through circumstantial evidence capable of supporting an inference of intentional discrimination. *See Denney v. City of Albany,* 247 F.3d 1172, 1182-1183 (11th Cir.2001).

In the absence of direct evidence of racial discrimination as is the case in the current matter, the plaintiff must create an inference of discrimination by establishing a prima facie case. *Williams v. Motorola*, 303 F.3d 1284, 1293 (11th Cir.2002). When a plaintiff has been discharged for misconduct, an inference of discrimination is created by proving three elements: (1) the plaintiff is a member of a protected class, (2) the plaintiff was fired from a job for which he or she was qualified, and (3) the misconduct for which the plaintiff was discharged was nearly identical to misconduct by an employee outside of the protected class who was retained. *Id*. If the plaintiff establishes a prima facie case, the defendant must identify a legitimate, non-discriminatory purpose for their conduct. *Id*. In *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989), the 11th Circuit Court of Appeals held that "even if a Title VII claimant did not in fact commit the violation with

---

[4]Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals's race..." 42 U.S.C. §2000e-2(1)

which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation."

For purposes of this motion for summary judgment, the defendant contests that the plaintiff has met his burden on the third element of the above three pronged test. Defendant's Motion for Summary Judgment with Incorporated Supporting Brief, at 42. Citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999), the defendant argues that to satisfy his prima facie case, the plaintiff must show a very high level of similarity between the actions of the individual and/or individuals terminated and the actions of the individual and/or individuals retained. ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second guessing reasonable decisions and confusing apples with oranges."). *See also Jones. v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1310-1311 (11th Cir. 1998)(for a Title VII, the comparator's misconduct has to be nearly identical).

In this case, plaintiff claims that he was similarly situated to a Caucasian employee who also used the Cingular Visa for personal purposes who was only disciplined while plaintiff was terminated for similar conduct. Complaint, ¶ 7. However, the evidence shows that the white employee was also terminated, nine days after the plaintiff's termination. *See* Def. Ex. 6; Def, Ex, 1, ¶¶ 17, 23.

The court finds that the plaintiff has failed to identify any employee outside

9

of his protected class who was retained by Cingular after such employee was found to be using a company credit card for personal expenses. The plaintiff did not submit any evidence to show that he was similarly situated to any employee retained. Absent evidence of some other similarly situated but differently disciplined worker, there can be no disparate treatment. *See Jones*, 874 F.2d at 1540-41.

For these reasons, the court finds that the plaintiff has failed to meet his burden to establish a prima facie case of race discrimination and the defendant's motion for summary judgment is due to be **GRANTED.**

### IV. Conclusion

For the forgoing reasons, the court hereby **GRANTS** the defendant's motion for summary judgment and **DISMISSES** this case **WITH PREJUDICE**.

**DONE** and **ORDERED** this the 1st day of December, 2004.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE